IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KELVIN DEMETRIS PEACOCK,          )
#187315,                          )
                                  )
    Plaintiff,             )
                                  )
v.                                )          CASE NO. 2:23-cv-705-RAH
                                  )
MATTHEW R. STONE, et al.,         )
                                  )
    Defendants.            )

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Kelvin Demetris Peacock, an inmate proceeding *pro se*, filed a Complaint under 42 U.S.C. § 1983 (doc. 1) and a subsequent amendment thereto (doc. 32). Plaintiff's pleadings name six defendants—Officer Matthew Stone, Warden Rolanda Calloway, Captain Hudson, Officer Penn, Sergeant Williams, and former Alabama Department of Corrections ("ADOC") Commissioner John Q. Hamm— and allege that each violated his constitutional rights while incarcerated at Kilby Correctional Facility in July 2021. (Docs. 1 & 32.) Plaintiff sues each of the named defendants in both their official and individual capacities, and he seeks declaratory relief, injunctive relief, and monetary damages. (*Id.*)

Pending before the Court is Defendants' Motion for Summary Judgment (doc. 76) and brief in support (doc. 77), to which Plaintiff has filed a response in opposition (doc. 82). Upon review of the parties' filings, and for the reasons explained below, the Motion for Summary Judgment will be **GRANTED** in part and **DENIED** in part.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id*.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id*. at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 999 (internal quotations and citations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## III.   RELEVANT FACTS[1]

The following facts derive from the sworn or verified pleadings and evidentiary materials proffered by the parties. (*See* Docs. 1; 27-1 through 27-5; 31-1 through 31-3; 35 at 4; 42-1 through 42-2; 50-1; 51 through 51-1; 82-1.)[2] The Court notes that the parties each present evidence of a markedly different version of events. However, for purposes of this Order, and in accordance with well-settled Supreme Court and Eleventh Circuit precedent, Plaintiff's non-conclusory evidence is believed, and all justifiable inferences are drawn in his favor. *See Tipton*, 965 F.2d at 999.

On July 12, 2021, in A-Dorm at Kilby Correctional Facility, Defendant Stone announced to the inmates, "You have til 8 o'clock to get your area in compliance." (Doc. 1 at 13; doc. 82-1 at 1.) Defendant Stone then stated to Plaintiff, "Put your blue state issued blanket on your bunk." (Doc. 1 at 14; doc. 82-1 at 1.) Plaintiff informed Defendant Stone that he had not been given a blue blanket since returning to Kilby after back surgery in April of 2021. (*Id*.) Defendant Stone replied, "I'm going to shake you down and when I find a blue blanket I am going to write you a disciplinary." (*Id*.)

Defendant Stone then ordered Plaintiff to stand up, and Plaintiff responded that he was in a wheelchair because he had extreme weakness in his legs and knees, he was unable to walk or stand on his own, and he had just had lower spine surgery.

---

[1] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

[2] When considering a motion for summary judgment, the Court "*need* consider only the cited materials, but it *may* consider other materials in the record." Fed. R. Civ. P. 56(c)(3) (emphasis added). However, "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment." *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003), *as amended* (Sept. 29, 2003)).

(Doc. 1 at 14–15; doc. 82-1 at 1.) Defendant Stone insisted that Plaintiff would "be alright" standing, so Plaintiff used the top bunk to pull himself to his feet. (Doc. 1 at 15; doc. 82-1 at 2.) Defendant Stone unfastened and removed Plaintiff's back brace and searched him. (Doc. 1 at 15–16; doc. 82-1 at 2.) Defendant Stone then "shoved the back brace against [Plaintiff's] back" and told Plaintiff to sit down. (Doc. 1 at 16.)

Plaintiff told Defendant Stone that he was going to report him to the captain and began rolling away in his wheelchair, at which point Defendant Stone yelled at him to stop. (*Id.*; doc. 82-1 at 2.) Plaintiff stopped as ordered. (*Id.*) Defendant Stone then yelled at Plaintiff to put his hands behind his back while holding a can of pepper spray in Plaintiff's face. (*Id.*) Plaintiff reached his hands behind him as far as they could reach and told Defendant Stone that his arms and shoulder blades were against the wheelchair handles. (Doc. 1 at 16; doc. 82-1 at 3.) Defendant Stone then sprayed Plaintiff in the face with the pepper spray and again told him to put his hands behind his back. (Doc. 1 at 16–17.) Defendant Stone "cuffed [Plaintiff's] left arm, shoved [his] head forward[,] and twisted [his] left arm toward the right arm in [an] attempt to cuff the right arm when [Plaintiff] felt a pop in [his] back." (Doc. 82-1 at 3.)

During this altercation, Defendant Penn was somewhere in A-Dorm "checking and replacing inmates['] wristbands." (Doc. 1 at 13; doc. 35 at 4; doc. 51-1 at 2; doc. 82-1 at 1.) He approached and said, "Hey, hold up. How far do you think his arm is going to go behind that wheelchair[?] Here, I got him, you know you need two (2) sets of cuffs. I got you, he was trying to break your damn arm[.]" (Doc. 82-1 at 3.) Defendant Penn then said, "I got you big man[,] let me get this other set of cuffs on you, and I will take you to medical to flush your eyes and get a body chart." (Doc. 1 at 17.) Defendant Penn escorted Plaintiff out of A-Dorm and said, "I hope your going to sue … him[.] He seen your arms were as far as they could go." (*Id.*)

5

Defendant Penn then asked Defendant Calloway to take Plaintiff to medical, and Defendant Calloway did so. (*Id*. at 18.) After flushing Plaintiff's eyes, Defendant Calloway told Plaintiff, "[E]verytime he get on the floor he's going to: hit a code, spray someone, lock someone up, or write someone a disciplinary[.] I don't know why they put him on the floor[.] He love to make inmates time hard. [Y]ou need to sue him." (Doc. 82-1 at 3.) Later that day, Defendant Williams told Plaintiff to write a statement. (Doc. 1 at 19.) Defendant Williams stated, "This is why I keep him in the cube, I'm tired of him, I hope your going to sue hi[s] ass." (Doc. 82-1 at 3.)

Approximately two days later, Plaintiff received a disciplinary from Defendant Stone for failure to obey a direct order of an ADOC employee, and he was subsequently transferred to Donaldson Correctional Facility. (Doc. 1 at 19; doc. 82-1 at 3.) Plaintiff received a hearing on July 20, 2021, and he was found not guilty. (Doc. 1 at 19, 24–26; doc. 82-1 at 3.) The hearing officer found that, because Plaintiff was in a wheelchair, "it could have been impossible to place his hands behind his back and be handcuffed to the rear with one pair of handcuffs on." (Doc. 1 at 25.)

Plaintiff claims that Defendant Stone's actions constituted retaliation in violation of the First Amendment; cruel and unusual punishment in violation of the Eighth Amendment; and assault and battery in violation of state law. (Doc. 1 at 20–21.) He further claims that Defendant Calloway and Defendant Hudson's failure to act on Defendant Stone's "misusing force record that led to Plaintiff being sprayed with pepper spray" constituted deliberate indifference in violation of the Eighth Amendment. (*Id*.) In his subsequent amendment to the Complaint, Plaintiff brings claims against Defendant Penn for failure to intervene; Defendant Williams for failing to report the incident to his supervisors; and Defendant Hamm for failing to ensure that Kilby, an ADOC facility, was "maintained in an orderly fashion." (Doc.

32.)[3] He seeks declaratory and injunctive relief as well as monetary damages. (Doc. 1 at 21–22.)

## IV.   DISCUSSION

### a.   To the extent Plaintiff seeks declaratory and injunctive relief, such claims were rendered moot by his transfer from Kilby Correctional Facility.

In a § 1983 action filed by a prisoner, a request for declaratory and injunctive relief becomes moot upon the transfer or release of that prisoner from the facility where his cause of action arose. *See Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (quoting *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("[A]n inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.")); *see also Owens v. Centurion Med.*, 778 F. App'x 754, 759 (11th Cir. 2019) (holding that inmate's transfer to different facility since filing § 1983 complaint rendered moot his deliberate indifference claims seeking only injunctive relief); *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007) ("The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief.") (citations omitted), *overruled on other grounds by Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021), and *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011).

Plaintiff's cause of action arose at Kilby Correctional Facility, and he was subsequently transferred to Donaldson Correctional Facility. (*See* doc. 1 at 4, 19.) Thereafter, in April of 2025, Plaintiff notified the Court that he had once again been transferred, this time to Elmore Correctional Facility. (Doc. 57.) To date, Plaintiff remains at Elmore. Accordingly, because Plaintiff has been transferred from the

---

[3] Notably, however, Plaintiff's amendment to the Complaint (doc. 32) is neither sworn nor verified under penalty of perjury. As such, the Court cannot consider any allegations therein in deciding summary judgment. *See Roy*, 53 F.4th at 1347 (citing *Carr*, 338 F.3d at 1273 n.26).

facility where his cause of action arose, his claims for declaratory and injunctive relief fail to present a case or controversy and will be **DENIED** as moot.

> **b.** **To the extent Plaintiff seeks monetary damages from Defendants in their official capacities, Defendants are entitled to sovereign immunity.**

Official capacity suits are "in all respects other than name, … treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). It is well-settled that Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it. *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, to the extent Plaintiff seeks monetary damages from Defendants in their official capacities as ADOC employees, Defendants are entitled to sovereign immunity, and the motion for summary judgment will be **GRANTED** as to Plaintiff's official capacity claims.[4] *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277–78 (11th Cir. 1998); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995).

---

[4] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Carr*, 916 F.2d at 1525 n.3 ("[S]tate officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983.").

     **c.**       **As to Plaintiff's First Amendment retaliation claim against Defendant Stone in his individual capacity, Defendant Stone is entitled to qualified immunity.**

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (citing *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989)). To succeed on a First Amendment retaliation claim, a plaintiff must demonstrate that "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the [defendant's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Williams v. Radford*, 64 F.4th 1185, 1192 (11th Cir. 2023) (quoting *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008)).

An inmate can establish retaliation "by demonstrating that the prison official's actions were the result of his having filed a grievance." *Stallworth v. Wilkins*, 802 F. App'x 435, 440 (11th Cir. 2020) (citation omitted). However, in this case, Plaintiff does not allege that Defendant Stone acted in retaliation for his filing a grievance—instead, he alleges that Defendant Stone sprayed him with pepper spray and filed a false disciplinary charge against him because he verbally stated that he was going to "report [Defendant Stone] to the captain." (Doc. 1 at 16; doc. 82-1 at 2. *See also* doc. 1 at 20–21, stating that Defendant Stone sprayed Plaintiff with pepper spray and filed a false disciplinary charge against him "for attempting oral complaint to supervisor," which "constituted retaliation of grievances.")

As an initial matter, numerous district courts have determined that verbal complaints, as opposed to formally filed grievances, are not constitutionally protected speech for purposes of the First Amendment. *See, e.g., Money v. Gibbs*, No. CV423-243, 2024 WL 5168090, at *5 (S.D. Ga. Dec. 19, 2024) ("Courts have

9

expressed skepticism that verbal complaints, as opposed to formal grievances, are constitutionally protected speech."); *Burton v. Hair*, No. 3:22-cv-6325-MCR-HTC, 2023 WL 8723686, at *7 (N.D. Fla. Sept. 28, 2023) (holding that inmate's verbal requests for the return of his Bible did not constitute protected speech); *Daker v. Head*, No. 6:14-cv-47, 2019 WL 11005452, at *19 (S.D. Ga. Dec. 20, 2019) ("[V]erbal complaints by inmates, without more, are likely not constitutionally-protected speech."); *Hoever v. Caper*, No. 4:14cv273-WS, 2014 WL 6674490, at *2 (N.D. Fla. Nov. 25, 2014) ("Because Plaintiff did not file a grievance and only verbally complained to Defendant Gordon, Plaintiff did not engage in constitutionally protected speech.").

Although the Eleventh Circuit has not affirmatively decided this issue, even it has expressed doubt that verbal complaints are constitutionally protected in certain contexts. *See Davis v. United States*, 272 F. App'x 863, 868 (11th Cir. 2008) (expressing doubt that inmate's belligerent verbal complaint about his cell assignment was constitutionally protected). Indeed,

> There are ample reasons which support limiting 'protected speech' of a prisoner to the contours of filing a grievance. Such reasons include establishing an evidentiary record, and eliminating disputes over whether a 'verbal complaint was given belligerently' in light of the fact that a prisoner is not free to use any words he chooses when addressing prison officials.

*Hoever*, 2014 WL 6674490, at *2 (citing *Davis*, 272 F. App'x at 868). This Court finds these arguments persuasive, particularly in this case in which Plaintiff merely stated an *intent* to lodge a verbal complaint to the captain. However, the Court need not decide this issue for purposes of ruling on summary judgment—it is instead sufficient that the law regarding this issue is unsettled.

Defendant Stone argues that he is entitled to qualified immunity. (Doc. 77 at 30–33.) Qualified immunity offers complete protection from civil damages for

10

government officials sued in their individual capacities if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Eleventh Circuit has explained:

> To determine whether a government actor is entitled to qualified immunity from a section 1983 claim, "we engage in a burden-shifting analysis." *Brooks v. Miller*, 78 F.4th 1267, 1280 (11th Cir. 2023). The burden first rests with the government actor, who "must show that he was acting within the scope of his discretionary authority when he committed the challenged acts." *Id*. If the government actor establishes that he acted within his discretionary authority, "the burden shifts" to the complaining party, "who must show that qualified immunity is not appropriate." *Id*. To make that showing, the complainant must establish that: (1) the government actor violated his constitutional or statutory right and (2) the unconstitutionality of that conduct was clearly established at the time of the violation. *Wilson v. Sec'y, Dep't of Corr.*, 54 F.4th 652, 660 (11th Cir. 2022).

*Hughes v. Locure*, 166 F.4th 121, 127 (11th Cir. 2026).

It is undisputed that Defendant Stone was acting within the scope of his discretionary authority when the challenged conduct occurred in this case. (*See* doc. 51 at 5.) Thus, the burden shifts to Plaintiff to present evidence that Defendant Stone violated his constitutional right *and* that the unconstitutionality of that conduct was "clearly established." *See Hughes*, 166 F.4th at 127 (citing *Wilson*, 54 F.4th at 660). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. [] In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotations and citations omitted). The Court may analyze these elements "in whatever order is deemed most appropriate for the case," and a finding of qualified immunity is appropriate if sufficient evidence has not been presented as to any one of the

11

elements. *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010), *aff'd* 566 U.S. 356 (2012) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

As far as the Court can discern, the law regarding whether a prisoner's verbal complaint—or, even more tenuously, threat of a *forthcoming* verbal complaint—constitutes protected speech was unsettled at the time of the alleged conduct, and it remains unsettled as of the issuance of this Order. Plaintiff has proffered no existing precedent suggesting otherwise. Therefore, because it cannot be said that Plaintiff's verbal statement was a clearly established right rendered "beyond debate" by existing legal precedent, *see Reichle*, 566 U.S. at 664, Defendant Stone is entitled to qualified immunity on this issue, and the motion for summary judgment will be **GRANTED** as to Plaintiff's retaliation claim.

> **d.    As to Plaintiff's Eighth Amendment excessive force claim against Defendant Stone in his individual capacity, Defendant Stone is not entitled to qualified immunity.**

The Eighth Amendment's prohibition against cruel and unusual punishment forbids the "unnecessary and wanton infliction of pain," including the use of excessive force. *Moore v. Hunter*, 847 F. App'x 694, 697 (11th Cir. 2021) (quoting *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010)). "In the prison context, an excessive force claim 'requires a two-prong showing: an objective showing of a deprivation or injury that is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official had a sufficiently culpable state of mind.'" *Id.* (quoting *Thomas*, 614 F.3d at 1304).

The objective component "is responsive to contemporary standards of decency," and therefore even "a de minimis use of force is cognizable under the Eighth Amendment if it is 'repugnant to the conscience of mankind.'" *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010)); *see also, e.g., Thomas*, 614 F.3d at 1311 (determining that the temporary pain caused by pepper spray may be

12

constitutionally cognizable "where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm").

The subjective component is dependent upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (quoting *Wilkins*, 559 U.S. at 37). To determine whether force was applied maliciously or sadistically to cause harm, the Court considers various factors including:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

*Williams*, 64 F.4th at 1196–97 (quoting *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999)).

Plaintiff has presented evidence that he complied with Defendant Stone's orders to the best of his ability when he stopped his wheelchair and reached his hands behind him as far as they could reach but, despite his compliance, Defendant Stone sprayed Plaintiff in the eyes with pepper spray, shoved his head forward, and twisted his arm until Plaintiff felt a pop in his back. (*See* doc. 1 at 16–17; doc. 82-1 at 2–3.) He further avers that, as a result of this incident, he "has to have reading glasses now and [is] still unable to walk or stand on his own after therapy and constant pain." (Doc. 1 at 5.) Viewing this evidence against the above factors in a light favorable to Plaintiff, a reasonable factfinder could conclude that Plaintiff has satisfied the objective and subjective elements of an excessive force claim.

Although Defendants present competing evidence that Defendant Stone's use of force was justified based on Plaintiff's refusal to comply and that any injury to Plaintiff was not caused by Defendant Stone's actions, the Court cannot take sides

13

or ignore Plaintiff's non-conclusory evidence at this stage. *See Tipton*, 965 F.2d at 999; *see also Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019) (finding that the parties' dueling stories about the underlying incident presented "a classic swearing match, which is the stuff of which jury trials are made"). Viewed in that light, the Court concludes that Defendant Stone is not entitled to qualified immunity on this issue[5], and the motion for summary judgment will be **DENIED** as to Plaintiff's excessive force claim.

> **e.** **As to Plaintiff's state assault and battery claim against Defendant Stone in his individual capacity, Defendant Stone is not entitled to state agent immunity.**

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a common nucleus of operative fact." *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (internal quotations and citations omitted). Exercising supplemental jurisdiction is discretionary. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966). Because this Court has jurisdiction over Plaintiff's federal excessive force claim, and the conduct forming the basis for the excessive force claim is the same conduct forming the basis for the state assault and battery claim, the Court concludes that the exercise of supplemental jurisdiction is appropriate here.

"The plaintiff in an action alleging assault and battery must prove '(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff;

---

[5] Generally, in the Eleventh Circuit, "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution[.]" *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted), *overruled on other grounds by Pearson*, 555 U.S. 223. "By 1998, [Eleventh Circuit] precedent clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued[.]" *Id*. at 1303 (citations omitted).

and (3) that the touching was conducted in a harmful or offensive manner.'" *Dolgencorp, LLC v. Spence*, 224 So.3d 173, 180 (Ala. 2016) (quoting *Harper v. Winston Cnty.*, 892 So.2d 346, 353 (Ala. 2004)). "A battery consists in an injury actually done to the person of another in an angry or revengeful or rude or insolent manner, as by spitting in the face, or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another." *Surrency v. Harbison*, 489 So.2d 1097, 1104 (Ala. 1986) (internal quotations and citations omitted). Even if one has the right to arrest or detain another person, the use of excessive force constitutes assault and battery. *See Evans v. Walker*, 237 Ala. 385, 387 (1939).

As noted above, Plaintiff has presented evidence that, despite his compliance with Defendant Stone's orders, Defendant Stone sprayed Plaintiff in the eyes with pepper spray, shoved his head forward, and twisted his arm until Plaintiff felt a pop in his back. (*See* doc. 1 at 16–17; doc. 82-1 at 2–3.) For the same reasons a reasonable factfinder could conclude that Defendant Stone used excessive force against Plaintiff in violation of federal law, he or she could also conclude that Defendant Stone committed an assault and battery against Plaintiff in violation of state law. *See Surrency*, 489 So.2d at 1104 (Ala. 1986) ("[W]hen there is conflicting evidence, as here, the issue of whether there was, in fact, an assault and battery at all is a question for the jury."). Thus, the Court concludes that Defendant Stone is not entitled to state agent immunity on this issue[6], and the motion for summary judgment will be **DENIED** as to Plaintiff's assault and battery claim.

---

[6] Under Alabama law, a state agent is not immune from civil liability "when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *S.S. ex rel. Montgomery v. Bolton*, 522 F. App'x 452, 454–55 (11th Cir. 2013) (quoting *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000)). Plaintiff's version of the facts supports that Defendant Stone acted willfully in spraying him with pepper spray, shoving his head, and twisting his arm despite Plaintiff complying with orders. Thus, Defendant Stone is not entitled to state agent immunity on this claim.

15

**f.    As to Plaintiff's Eighth Amendment failure to intervene claim against Defendant Penn in his individual capacity, Defendant Penn is entitled to qualified immunity.**

"[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance." *Williams*, 64 F.4th at 1199 (quoting *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007) (internal quotations and citation omitted)); *see also Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000) ("[A]n officer can be liable for failing to intervene when another officer uses excessive force."). However, to survive summary judgment, a plaintiff must present sufficient evidence to permit a reasonable jury to conclude that the officer (1) was in a position to intervene in an ongoing constitutional violation and (2) failed to do so. *Williams*, 64 F.4th at 1199 (citing *Priester*, 208 F.3d at 924); *see also Johnson v. White*, 725 F. App'x 868, 878 (11th Cir. 2018) (explaining that the observing officer "must have both the opportunity to intervene and be in a position to intervene and yet fail to do so"). "Instances of force that occur within seconds do not place officers in a realistic position to intervene." *Id*.

Here, Plaintiff fails to present evidence that Defendant Penn had time to intervene or was in a realistic position to do so before the alleged use of excessive force. Although it is undisputed that Defendant Penn was *somewhere* in A-Dorm when the incident occurred, it is also undisputed that he was busy interacting with other inmates. (Doc. 1 at 13; doc. 35 at 4; doc. 51-1 at 2; doc. 82-1 at 1.) Additionally, the altercation between Plaintiff and Defendant Stone happened quickly, and there is no evidence to suggest that Defendant Penn had an opportunity to intervene or was in a position to intervene before Defendant Stone instantaneously sprayed Plaintiff with pepper spray, shoved him forward, and twisted his arm. *See, e.g., Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (holding, in

16

a similar case in which the plaintiff alleged that one officer held him down while another kicked him and a third observed without intervention, that plaintiff "did not allege any facts that would allow [the court] to conclude that the [observing] officers had time and were in a position to intervene").

Moreover, Plaintiff's evidence demonstrates that, immediately after the pepper spray was administered, Defendant Penn did in fact separate Plaintiff from Defendant Stone, place two sets of handcuffs on him without injury, and ensured he received any necessary medical treatment. (Doc. 1 at 17; doc. 82-1 at 3.) There is simply nothing in the record to demonstrate that Defendant Penn acted unreasonably under the circumstances or that he could have intervened in a timelier manner. Accordingly, because Plaintiff has failed to present evidence that Defendant Penn violated his constitutional rights, the Court concludes that Defendant Penn is entitled to qualified immunity, and the motion for summary judgment will be **GRANTED** as to Plaintiff's failure to intervene claim.

> **g.    As to Plaintiff's Eighth Amendment claims against Defendants Calloway, Hudson, Williams, and Hamm in their individual capacities, these Defendants are entitled to qualified immunity.**

i.    <u>Defendants Calloway and Hudson</u>

Plaintiff claims that Defendants Calloway and Hudson's failure to "act against Defendant Stone's misusing force record that led to Plaintiff being sprayed with pepper spray constituted deliberate indifference in violation of the Eighth Amendment." (Doc. 1 at 20.) "To survive summary judgment on a deliberate indifference failure-to-protect claim, a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) causation." *Mosley v. Zachery*, 966 F.3d 1265, 1270 (11th Cir. 2020) (internal quotations omitted). To establish deliberate indifference, a plaintiff must demonstrate "that the defendant acted with 'subjective recklessness as used in

17

the criminal law,' … and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024).[7]

The evidence before the Court fails to demonstrate that Defendants Calloway and Hudson were actually, subjectively aware that their conduct caused a substantial risk of serious harm to Plaintiff. Defendant Calloway adamantly denies any deliberate indifference to the conduct of Defendant Stone and avers that she was wholly unaware of any issues between Plaintiff and Defendant Stone that needed her attention. (Doc. 27-1 at 1.) Defendant Hudson also adamantly denies any knowledge of Defendant Stone misusing force against inmates and avers that he "never allowed [Defendant] Stone to misuse force against any inmate." (Doc. 27-2 at 1.) Plaintiff has failed to present evidence sufficient to rebut these assertions. Indeed, Plaintiff does not allege that he had any prior issues or altercations with Defendant Stone of which Defendants were aware, and Defendant Stone's personnel file is devoid of any prior instances of excessive force at Kilby. (*See* doc. 50-1.)[8]

Although Plaintiff asserts that Defendant Calloway questioned why Defendant Stone was put on the floor and stated, "[E]verytime he get on the floor he's going to: hit a code, spray someone, lock someone up, or write someone a disciplinary" (doc. 82-1 at 3), this assertion alone fails to demonstrate either a substantial risk of serious harm to Plaintiff or Defendant Calloway's awareness that her own conduct

---

[7] "[C]ivil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is *either known or so obvious that it should be known*." *Wade*, 106 F.4th at 1256 (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). By contrast, "criminal law … generally permits a finding of recklessness only when a person disregards a risk of harm *of which he is aware*." *Id*. (citing *Farmer*, 511 U.S. at 836–37).

[8] It appears that Defendant Stone's only documented prior use of excessive force was at a different correctional facility nearly ten years prior to the present incident. (*See* doc. 50-1 at 71–73.) There is no evidence that Defendants Calloway and Hudson were subjectively aware of this incident or that, even if they were, it created a substantial risk of serious harm to Plaintiff.

placed him at such risk. Accordingly, absent evidence that Defendant Calloway or Defendant Hudson violated Plaintiff's constitutional rights, the Court concludes that these individuals are entitled to qualified immunity, and the motion for summary judgment will be **GRANTED** as to Plaintiff's Eighth Amendment claims against them.

      ii.      <u>Defendant Williams</u>

In his amendment to his Complaint, Plaintiff claims that Defendant Williams was deliberately indifferent because "he failed to report the incident to his supervisors or superiors." (Doc. 32 at 2.) However, as noted above, the amendment is neither sworn nor verified under penalty of perjury, and as such, the Court cannot consider this allegation in deciding summary judgment. *See Roy*, 53 F.4th at 1347 (citing *Carr*, 338 F.3d at 1273 n.26). Moreover, the remaining evidence before the Court makes clear that Defendant Williams did in fact report the incident. Indeed, Defendant Williams avers that, after he questioned Plaintiff about the incident, he then notified his superior—Captain Catrina Robbins—of the incident. (Doc. 42-1 at 1–2.) This assertion is corroborated by the fact that a use of force investigation was conducted, and Defendant Williams' name appears on the "Inmate Body Chart Documentation Form" as the individual requesting the body chart. (Doc. 27-4 at 1–14.)

Thus, there is simply nothing in the record to suggest that Defendant Williams failed to report or acted with deliberate indifference by failing to do so. *See Davis v. Inch*, No. 3:20-cv-5935-MCR-HTC, 2021 WL 2405243, at *5 (N.D. Fla. Jan. 14, 2021) ("Failure to report [an] incident does not violate the Eighth Amendment absent facts showing that by failing to report the incident, [the defendant] knowingly disregarded an excessive risk to [Plaintiff's] health or safety.") (quoting *Gifford v. Rathman*, No. 1:14-cv-1179-SLB-JEO, 2017 WL 4340454, at *26 (N.D. Ala. Sept. 29, 2017)). Accordingly, absent evidence that Defendant Williams violated

19

Plaintiff's constitutional rights, the Court concludes that Defendant Williams is entitled to qualified immunity, and the motion for summary judgment will be **GRANTED** as to Plaintiff's Eighth Amendment claim against him.

### iii.    Defendant Hamm

Finally, in his amendment, Plaintiff claims that it was Defendant Hamm's "job … to oversee that all facilities (ADOC) are maintained in an orderly fashion and that all responsible are punished to the full extent of the law and A.R. #208." (Doc. 32 at 3.) However, once again, any unsworn allegations in the amendment cannot be considered, and there is no further evidence that Defendant Hamm, as former Commissioner of the ADOC, engaged in any wrongdoing. Indeed, "[w]ithout personal participation in a constitutional violation, a supervisor is liable only if the plaintiff can show that the supervising official's actions caused the alleged constitutional deprivation." *Bridges v. Poe*, 155 F.4th 1302, 1314 (11th Cir. 2025) (internal citations omitted). Plaintiff neither alleges nor provides any evidence that Defendant Hamm's actions caused his alleged constitutional deprivation. Even if Plaintiff believes Defendant Hamm *should have* somehow known of a risk of serious harm posed by Defendant Stone, it is well-settled that "an official's failure to alleviate a significant risk that he should have perceived but did not" is insufficient to establish liability. *Farmer*, 511 U.S. at 838; *see also Wade*, 106 F.4th at 1256.

Accordingly, absent evidence that Defendant Hamm violated Plaintiff's constitutional right, the Court concludes that Defendant Hamm is entitled to qualified immunity, and the motion for summary judgment will be **GRANTED** as to Plaintiff's Eighth Amendment claim against him.

### V.    CONCLUSION

Accordingly, for the reasons explained above, it is **ORDERED** as follows:

1.      Plaintiff's claims for declaratory and injunctive relief are **DISMISSED** as moot;

20

2.     Defendants' Motion for Summary Judgment (doc. 76) is **GRANTED** in part and **DENIED** in part as set forth herein;

3.     As to all claims against Defendants Penn, Calloway, Hudson, Williams, and Hamm in both their official and individual capacities, the motion is **GRANTED**;

4.     As to all claims against Defendant Stone in his official capacity as well as the claim of First Amendment retaliation against Defendant Stone in his individual capacity, the motion is **GRANTED**; and,

5.     As to the claims of Eighth Amendment excessive force and state law assault and battery against Defendant Stone in his individual capacity, the motion is **DENIED**.

An order setting this matter for trial will be entered separately.

**DONE**, on this the 20th day of July 2026.


_____
R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE